<hr />

## Ivins v. Hines.

1. **Mortgage:** UPON CHATTELS: UNCERTAINTY OF DESCRIPTION. The description in a chattel mortgage should be so explicit as to enable third persons, aided by the inquiries which the instrument itself suggests, to identify the property covered thereby, and a mortgage mis-describing property will not affect the purchase of the same by a third party by imparting to him notice of the incumbrance.

*Appeal from Pottawattamie District Court.*

MONDAY, DECEMBER 11.

THE plaintiff filed in the Pottawattamie District Court his petition, claiming of George Doughty, sheriff, the immediate possession of thirty-seven head of cattle, amongst which were three cows, each branded with "Ivins" on horn, and letter "J" on hip, and alleging that defendant holds the same in virtue of the levy of an execution thereon as the property of one William M. McMahon.

T. J. Hines filed in said cause a petition of intervention, claiming to be the absolute owner of the stock, in virtue of the assignment to him of a chattel mortgage executed to one Rand, dated and recorded Feb. 12, 1874. The mortgage contains the following description: "Fourteen cows, branded with star on right horn." The plaintiff for answer to the petition

of intervention says, "that the mortgage does not embrace, describe or include any of the property in controversy in this action."

The cause was tried by the court, who rendered judgment for the intervenor for three cows, of the value of ninety dollars. Plaintiff appeals.

*Clinton, Hart & Brewer,* for appellant.

*Sapp & Lyman,* and *B. W. Hight,* for appellee.

DAY, J.—The evidence establishes, without any conflict, the following facts: In 1872 and 1873 the plaintiff purchased thirty-six head of young cattle, and gave them to William McMahon to keep. Plaintiff was to have the sole ownership and control of the cattle, and was to dispose of them when he saw proper, and McMahon was to have one-half the net profits for feeding and caring for the cattle, the intention being to grow and fatten them for market. The cattle were all branded "J" on hip, and "Ivins" on horn. In July, 1875, plaintiff learned that McMahon had been disposing of some of his cattle, and he immediately investigated the matter, and had an accounting. At that time McMahon turned out to plaintiff the cattle in controversy. From twelve to fifteen of these were the cattle originally purchased by plaintiff. The others were given by McMahon in lieu of those disposed of by him.

The plaintiff had them all branded as described in the petition, and they remained on the range near McMahon's farm.

On the 12th day of February, 1874, to secure the payment of $750, McMahon executed to J. S. Rand a chattel mortgage upon certain property, amongst which was the following description: "Fourteen cows branded with star on right horn." This mortgage was recorded on the 12th day of February, and was assigned to Hines on the 16th day of the same month. McMahon, at the time he gave the mortgage to Rand, had a herd of cattle seventy or eighty in number. Those intended to be described in the mortgage were not, at the time of the execution of the mortgage, branded at all, but

McMahon promised that he would have them branded to correspond with the brand stated in the mortgage. He failed to do this, and the cattle were never branded as stated in the mortgage. McMahon stated at the time that the mortgage was intended to apply to his home herd—the stock he intended to keep as home stock. Rand was well acquainted with McMahon's stock when he took the mortgage. · The three cows claimed by Ivins were among those mortgaged to Rand. Neither Rand nor Hines knew that Ivins claimed any interest in McMahon's herd until July, 1875.

The plaintiff, at the time the cattle were turned out to him, had no knowledge whatever of the mortgage from McMahon to Rand. McMahon said that he had exchanged those purchased by plaintiff for many of those he was turning over, and that they were free from liens.

Under these facts, we think the court erred in finding the intervenor entitled to the three cows in controversy. The

1. MORTGAGE upon chattels: uncertainty of description. mortgage under which intervenor claims described the cows intended to be included in it as "branded with a star on right horn." The cattle turned out to plaintiff were not so branded. The true rule respecting the sufficiency of a description in a chattel mortgage is that stated in *Smith & Co. v. McLean*, 24 Iowa, 322, as follows: "That description which will enable third persons, aided by inquiries. which the instrument itself indicates and directs, to identify the property is sufficient." The chattel mortgage in question, instead of indicating or suggesting inquiry, was calculated to suppress all inquiry. It contained a specific designation of the property included within it, "fourteen cows, branded with star on right horn." When property was offered to plaintiff containing no such brand, he certainly had a right to conclude that the mortgage did not refer to it. If the description had been simply fourteen cows, perhaps reasonable prudence and caution should have suggested to him to inquire what cows were meant. But the natural effect of the specific description was to stifle all further inquiry.

It is claimed, however, that appellant was no way prejudiced by this description, because he had no knowledge whatever of

the existence of the mortgage. It will not do, however, to hold that, having no knowledge of the mortgage, plaintiff is in a worse position than if he had known of its existence. It is simply because of the constructive notice which the record of the mortgage imparts that plaintiff is bound by it at all. If it had not been recorded, it would, as to plaintiff, have been altogether ineffectual. It would be anomalous to say that plaintiff is bound by the mortgage because the record imparts to him constructive knowledge of its contents, and, at the same time, that he was no way misled by its description of property, because he did not know of its existence.

REVERSED.